21-31-26 Westfall Auto Sales LLC et al. versus Zurich American Insurance Company et al. Oral argument not to exceed 15 minutes per side. Mr. Traska for the plaintiff's appellants. Good morning. Good morning, your honors. May it please the court. I'm Peter Traska for the appellants who are Westfall Auto Sales LLC and IMS LLC. The IMS stands for Incident Management Solutions. My clients are a mom and pop wrecking company. That's the auto sales, probably the oldest part of the business is their wrecker capacity. Ten years ago, there was a wreck that is Ohio where one tractor trailer rear-ended another one in a construction zone. The one that got hit from behind had been hauling hydrochloric acid. There was acid venting. It's a mess. The way law enforcement handles this kind of mess in Ohio is to, by statute, there is overlapping state, county, and municipal, even fire departments have the statutory authority to make the call. So in different parts of the state, it works different ways. But the point is that wreckers get to know all of who these actors are, especially in Harrison County, Ohio, where the facts of this case get started. The appellee here is, there's only one appellee left through all this litigation and it's a fellow named Bob Watson. Mr. Watson takes it upon himself to get involved when there are significant towing and recovery invoices. He will approach the insurance companies and pitch his services. As we said in the briefs, it's fair play to make arguments about a bill being too high or to negotiate kind of tough. But it is not fair play to make false statements to law enforcement agencies and to state regulators who are in position to hurt a business's ability to operate. And that's what happened here. So the chain from Mr. Watson to the eventual harm to the plaintiffs, I want to make sure that it's clear on the record where we were able to document this. I asked Mr. Watson point blank, okay, so are you the one that started the complaint with the Ohio Department of Insurance? And he said, I don't recall. And I thought immediately, well then there's not going to be summary judgment. You don't get summary judgment on I don't remember. But here we are. So when I then cross-examined him on several other records that I was just able to find on the internet where the Texas Department of Insurance or the West Virginia office that regulates towing and recovery people, there's regulators openly wondering who is this guy calling me from North Carolina and why does he care about this wreck in Texas and what the heck is going on here. So he admitted that this is what he does. This is a practice of his to call state regulators. He further admitted that he probably did call the Ohio Department of Insurance at some point, he just couldn't recall whether it was about the West Falls. So after five years of trying, I got the records from the Ohio Department of Insurance on their investigation. And the first record site I want to make sure is crystal clear here is that the trial court's record, page ID 375, these records specifically say that the investigation the Department of Insurance got started was in respect to this record. So I don't have Watson's name on that anonymous complaint, but I've got everything but. And I don't think that the trial court had any problem with that connection. And certainly that's not the basis of the grant to summary judgment. From the Ohio Department of Insurance, page IDs 424 to 432 show extensive emails back and forth with an officer at the Ohio Environmental Protection Agency. There are only two field agents for that district in OEPA and one of these two field agents Let me ask you, there's a dispute about whether an affidavit was timely filed or was appropriately brought to the attention of the district judge in connection with the motion for summary judgment. And if the affidavit were not before the district judge or the judge didn't have appropriate notice of the filing of the affidavit, would you be entitled to the ruling you're seeking on the summary judgment motion or would you concede that in the absence of the affidavit, the summary judgment was appropriately entered? I would not concede that. Even without the affidavit and the trial court didn't make any reference to this. It was briefed but it doesn't appear. I'm not sure the appellee treated this issue either. Look at page ID 431. In these records that we got via the Ohio Department of Insurance, there's a communication showing that the Ohio EPA directly interfered with a company that generated a spill and that was going to hire IMS. The notes show the OEPA field agent, in the context of this investigation, talking this company out of hiring my clients to do a cleanup. So it's tough to get people to come out and say, oh I didn't hire your client because I was getting leaned on by the Ohio EPA. It's very hard to get that kind of evidence. But there is very hard evidence to that fact on the record even without the affidavit. Now the affidavit, I told the court I had a lot going on, I'm sorry I blew the summary judgment deadline. By the time the court gave us leave to oppose the motion for summary judgment, the affidavit had been on the record for weeks. Which is why you're not going to find... You mean the unsigned version? No, the signed version. We got it in with the motion for leave to file in Stanter with an unsigned version, but within a week or so of that, we got the signed version on. And then it was maybe three weeks or so later that the court granted leave after a hearing to... It didn't come up in the trial court at all because I don't think Mr. Cook, you couldn't look at that record and say that the affidavit wasn't filed because it was. I think it's just a plain mistake by the trial judge. Well at some point you found the executed or signed version of the affidavit. We know that because it appears on the docket, but there's also an indication that the judge was not made aware that you had subsequently, when I say subsequently I mean subsequent to providing an unsigned copy, that you had then filed the signed copy. There was no indication in the record that I could see that the judge was made aware that you had filed that signed copy of the affidavit prior to the court's ruling on the motion for summary judgment. What do you say about that? The affidavit was filed with a notice of filing executed affidavit. I'm not aware of any other manner in which it's proper to alert the trial court. This isn't a pick up the phone and say hey, the notice puts the opposing side on notice and puts the court on notice as well. If there was any issue here about the affidavit not having been on the record in its executed form at the time the court granted leave, I would think that we'd have seen that in the reply brief, but it wasn't there because there was nothing to object to. The trial judge just missed it. That's all I can tell you. Of course the court never acknowledges being aware of this subsequently submitted affidavit. You would conceive that at least. No. And the reason being that the fundamental maxim here is that the court speaks through its dockets. The affidavit executed is on the docket. Before we had leave, before the court said okay we'll accept the opposition, the affidavit was in. Of course the judge is not obligated to peruse the docket to search for filings that are not brought to his attention necessarily. As far as I know, maybe there's something here that I'm missing. Your Honor, I'm not sure that I can, I think we've illustrated the disagreement here. I'm not sure there's much more to say on it. But honestly I wouldn't know another way, another mechanism other than filing a notice on the docket saying hey the executed affidavit is here now. That's the purpose of filing it with a notice saying it's on the docket. On a review of summary judgment, the job is to look at everything that might go to the issues, the affidavit's reference in the brief. It's a mistake. I'm not critical of the trial judge. I just have to point out for the client's sake obviously that this is an incorrect statement. There are a limited amount of time left. There's a couple of omissions in the Apollese brief and issues not addressed by the trial court. Before you get to that, I wanted to ask you to describe to me if you can what the existing or prospective contractual relationship is in this case because I'm having trouble identifying it. That is actually one of the things I was going to get to. The trial court seemed to get caught up in the difference between tortious interference with contracts and tortious interference with business expectancy. Business expectancy in Ohio is what other jurisdictions would call prospective economic advantage. I briefed this about as thoroughly as I could. If I could refer you to one case, it's Dolan versus the city of Gloucester which I'm pretty sure is a 4th district Ohio case specifically about a towing company having a falling out with a small town mayor. This case is tailor made to show you that the relationships that towing companies have with municipal and county and state authorities, these relationships make or break whether the company is going to have a level playing field. Again, we had to reverse engineer from the affidavit which is from a colleague company saying, yeah we used to hire IMS all the time and Ohio State Patrol told us in 2013, you can't hire them anymore or we'll throw you off the rotation. That was stunning to them. So the interference was created by the Ohio Department? Mr. Watson calls the Department of Insurance. Department of Insurance shows regular communication with the Ohio EPA and it's that field agent at the Ohio EPA who is in contact both with spill generators, again the issue not addressed, and with the Ohio State Highway Patrol. If you're looking back to Mr. Watson, and we still don't know for absolute certainty that he's the one that made the call, and if he did make the call, is it foreseeable that the agency might take that action? We went over this at length in his deposition. This is his reason for making these calls. He will initiate regulatory, in states that have a form, he'll initially initiate regulatory proceedings for the sole purpose of creating leverage to get somebody to back away from an invoice. And your authority for all this is a case out of a, was it a court of appeals in Ohio? Yes, Your Honor. I'm pretty sure it was 4th District, I might be mistaken. That doesn't help us identify it. Well, it's in the briefs. It's Dolan v. City of Gloucester. I'll reserve what we have. Thank you. We'll hear from Mr. Cook. Yes. Good morning. Good morning. I wanted to address a couple of things. Judge Cole, regarding the Myers affidavit that you got questions about? Judge Clay did. Okay. Sorry. The affidavit, there's a whole variety of reasons why it doesn't change the result here. One is, there was no motion for leave to file, and if you look closely at the docket, the court, when it granted leave to file, said we grant leave to file document 50. And document 50 has the unsigned affidavit in it. The court never granted leave to file document 53, even though it was asked to, sort of chronologically, because no one ever asked for leave to file it, via motion. Second, the affidavit is hearsay. It's clear hearsay. It says what some unidentified person from the Ohio Highway Patrol said. So it's not admissible. Third, it's opposition that, even if you want to consider the affidavit, all it says is, well, someone at the Highway Patrol told us not to use IMS. It doesn't say anything to Mr. Watson. It doesn't tie anything to Mr. Watson. It doesn't tie anything to Mr. Watson's conduct. There's just no connection. And we don't know why the Highway Patrol was doing that, because no witness from the Highway Patrol, despite 10 years, has ever been called. No one's ever been deposed from the Highway Patrol as to why you were doing this. And there was certainly ample time, a state court lawsuit before this, to take that deposition. And the judge correctly found that there was just no evidence of that. There is no existing or prospective business relationship that Mr. Watson has to intentionally interfere with it. And the case law says he doesn't have to have this constructive knowledge of this business relationship. He must have actual knowledge of a prospective business relationship and intentionally interfere with it. And even if you agree, which we do not, that he somehow contacted the Department of Insurance, that does not prove that he intentionally interfered with a specific business relationship that he had actual knowledge of. And the law in this court and in other federal courts in Ohio has been very specific about requiring a specific relationship to avoid complaints like this one where someone just sort of makes a general allegation of this interfered with some unidentified business relationship. There was no specific, and it must be specific. And I also note that although the trial court did not rule on it, part of our motion for summary judgment was actually a motion under Rule 56 and 12C. I mean, we moved in the trial court to say that this hasn't even been properly played. The court chose the rule based on Rule 56. And as noted, I think this procedure, I have to note, since I possibly should have actually, and I apologize to the court, I should have actually filed a motion to dismiss Zerk because the claim against them has basically been abandoned. Nothing's been raised in the brief. Nothing's been raised in the argument as to Zerk or as to the fraud claim, which were actually a big part of the underlying case. But those claims are gone. And there is just no evidence of the elements of tortious interference of a business relationship. The affidavits of the West Falls don't say anything. Mr. Watson was deposed. He doesn't admit anything. And there's nothing to tie this very large file from the Department of Insurance. If you really look at it, it doesn't tie anything to Mr. Watson. It's an anonymous complaint, which I also find interesting because we objected in our reply to this use of the other incidents, saying it was not really habit evidence. But in the other incidents, he always made the complaint himself. And it makes no sense to make an anonymous complaint to somehow gain leverage in a particular transaction. He did not make the complaint because what happened in this case was he did some investigation, made a couple of calls, and then a replevant action was filed in state court. That's how this whole mess started. West Falls was keeping property. A replevant action was filed. And as soon as the replevant action was filed, Mr. Watson had nothing further to do with it. And a third-party complaint was filed as part of the replevant action, but was dismissed without prejudice because it wasn't a proper third-party complaint. But it's our position that there's just no, and that the district court properly found there's no specific evidence. And great specificity is required here to avoid a generalized business claim. And there just was no evidence tying Mr. Watson to this, even if he did make the claim with the Department of Insurance. In essence, what the plaintiff is asking you to do is just stack a whole bunch of inferences. We have to infer that Watson made the complaint, that he knew about this relationship with the Department of Insurance, and that he intentionally wanted to do it. And, you know, there's just no evidence to support any of those inferences. And if there's nothing further, I'll just ask the court to affirm the judgment of the district court. All right. Thank you. Thank you, Mr. Cook. Mr. Traska. May it please the court, Judge Daugherty, the site is Dolan v. City of Gloucester, and it's 173 Ohio Ave. 3rd, 617. That's the one showing that it is tortious for a city officer to interfere with the channels through which wreckers get work. Because it goes through law enforcement and fire. It's very possible to poison the stream for clients like mine. The two points I'd make further, it's a tort in Ohio, separate from defamation, to make a false report to a law enforcement agency. There's no doubt that the Ohio Department of Insurance, in its investigative capacity, is a law enforcement agency. That was the reason why they withheld records for as long as they did, is claiming that they weren't subject to disclosure because of investigatory privilege. Never, that issue was not addressed by the trial court, hasn't been addressed by the appellee. In terms of the, Mr. Cook said, inference upon inference, the only inference, we don't need absolute certainty, we don't need beyond metaphysical doubt proof, we need a preponderance of evidence, ultimately. On review of summary judgment, the question is, is there enough here that would allow reasonable minds to conclude that Mr. Watson is the one who made the call? He was cross-examined, said, I don't know, I'm sure I called ODI on other occasions, and yeah, that's me calling these other state regulatory agencies. As to why he didn't put his name on that complaint, ODI has an anonymous complaint portal. I'm sure that's convenient. He's got a, in his deposition, he was cross-examined thoroughly on whether sabotage is a strategy of his, and that's what this case is about. Did you, is there any evidence in the record in terms of the basis upon which the insurance company, or Ohio Department of Insurance, took action? I guess my question is, you know, really, it may or may not make any difference whether somebody filed any sort of anonymous complaint. I mean, it's a state agency, it takes action based upon whatever criteria would, you know, dictate that it should take action. And it seems to me that, I'm just wondering if there's any discovery in terms of what caused the ODI to take action, what action it took based upon what? For our purposes today, the evidence is page ID 375 of the trial court record, where specifically this investigation is tied to this date of the accident. Now, who else is making noise about this accident? If I had a jury in the box, I would be having my clients explain how so many of their relationships turned visibly to them. But it's hard to, you know, that's not competent evidence that shows up in an affidavit. It was palpable to them, and it was a years-long process to try to reverse engineer what we have. Mr. Troska, let me ask you this. There's some indication in the record that you all went to mediation at some point with this case. Is that correct? That is correct, Your Honor. And was it our settlement office that you utilized for that purpose? We did a trial court mediation, and we did have contact with the mediation office in the Sixth Circuit. And I do not recall whether we had a mediation date in this court, Your Honor. Well, let me ask you this. Would it be worthwhile to get a date set up with the settlement office and see if you all can settle this? Your Honor, plaintiffs would be amenable to that. I can tell you that after 10 years of litigation, expectations get tempered. And that's usually not a bad thing. But yes, plaintiffs, appellants would be willing to entertain that. Mr. Cook, do you have a position on possibly giving this to the settlement office for a try? I have a position, but I think my client's position is different. Your Honor, we did have a mediation in the Sixth Circuit, and my client said, at least at that time, I'm willing to offer it. There was no progress made, let me say. None at all.  I can't reveal what happened in the mediation. No, I'm not asking you to. I'm asking you if you think it might be helpful to go back through it. But if your position is no, then that's... I don't think it will, but I will inquire. Would you do that? And if the answer has changed in any way, let us know by letter within, say, 10 days. Yes, I can do that, Your Honor. All right, thank you. Thank you both. Thank you, Your Honor. The case will be submitted, and the clerk may call the next case.